UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER L. MEIERS,

                         Plaintiff,

         v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

<u>DECISION & ORDER</u>

19-CV-6195MWP

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Jennifer L. Meiers ("Meiers") brings this action pursuant to Section
205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision
of the Commissioner of Social Security (the "Commissioner") denying her applications for
Supplemental Security Income and Disability Insurance Benefits ("SSI/DIB").  Pursuant to the
Standing Order of the United States District Court for the Western District of New York
regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the
parties have consented to the disposition of this case by, the undersigned.  (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 12, 13).  For the
reasons set forth below, this Court finds that the decision of the Commissioner is supported by
substantial evidence in the record and is in accordance with applicable legal standards.
Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Meiers's
motion for judgment on the pleadings is denied.

## DISCUSSION

**I.     Standard of Review**

   This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

   To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the

fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v.

Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must

employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)

(*per curiam*).  The five steps are:

> (1)    whether the claimant is currently engaged in substantial gainful activity;
>
> (2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3)    if so, whether any of the claimant's severe impairments meets or equals one of the Listings in Appendix 1 of Subpart P of Part 404 of the relevant regulations;
>
> (4)    if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and
>
> (5)    if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **The ALJ's Decision**

        In his decision, the ALJ followed the required five-step analysis for evaluating disability claims.  (Tr. 15-26).[1]  At step one of the process, the ALJ found that Meiers had not engaged in substantial gainful activity since March 11, 2015, the alleged onset date.  (*Id.*).  At step two, the ALJ concluded that Meiers had the severe impairments of seizure disorder, obesity, depressive disorder, anxiety disorder, and personality disorder.  (*Id.*).  At step three, the ALJ determined that Meiers did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments.  (*Id.*).  With respect to Meiers's mental limitations, the ALJ found that she suffered from moderate limitations in interacting with others, and concentrating, persisting or maintaining pace, and no limitations in understanding, remembering, or applying information, and adapting or managing oneself.  (*Id.*).  The ALJ concluded that Meiers had the RFC to perform light work involving simple, routine and repetitive tasks and only occasional interaction with the public and coworkers.  (*Id.*). Additionally, the ALJ concluded that Meiers was unable to perform jobs requiring her to drive, be exposed to heights, or to work with or near heavy machinery.  (*Id.*).  At steps four and five, the ALJ determined that Meiers had no past relevant work but that jobs existed in the national economy that Meiers could also perform, including the positions of mail clerk and laundry worker.  (*Id.*).  Accordingly, the ALJ found that Meiers was not disabled.  (*Id.*).

---

[1]   The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

III.   **Meiers's Contentions**

Meiers contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket # 12-1).  First, Meiers maintains that the ALJ provided an insufficient rationale for his step three finding that Meiers's epilepsy did not meet the requirements for Listing 11.02 (epilepsy).  (*Id.* at 11-16).  Second, Meiers asserts that the ALJ failed to account for her limitations in dealing with supervisors in formulating her mental RFC.  (*Id.* at 16-19).

IV.   **Analysis**

A.   **The ALJ's Step Three Determination**

I turn first to Meiers's contention that at step three the ALJ erroneously evaluated whether she qualified as disabled under Listing 11.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1, a listed impairment for epilepsy.  (*Id.* at 11-16).  Meiers argues that the ALJ's analysis was "pithy" and insufficiently explained his reasoning that Meiers did not meet Listing 11.02A.  (*Id.*).  In addition, Meiers points to record evidence purportedly demonstrating that she meets each requirement of that listing.  (*Id.*).

The Commissioner responds that the ALJ's step three determination is supported by substantial evidence because Meiers "fail[ed] to establish a three-month period during which she experienced tonic clonic seizures despite medication compliance," which is a requirement for Listing 11.02A.  (Docket # 13-1 at 8-9).  Based on a careful review of the record evidence, I agree with the Commissioner.

"At step [three] of the sequential evaluation process for determining disability in adult and child claims, [the Commissioner] make[s] a medical assessment to determine whether

5

an individual's impairment meets a listing in [20 C.F.R. Part 404, Subpart P, Appendix 1]."

Social Security Ruling ("SSR") 17-2P, 2017 WL 3928306, *2 (Mar. 27, 2017); *see also* 20

C.F.R. §§ 416.920(a)(4)(iii), 416.924(d).  "[A] claimant is entitled to a conclusive presumption

that [she] is disabled if [her] impairment meets or is medically equivalent to an impairment listed

in [the Listings]."  *Carter v. Colvin*, 2016 WL 3360559, *11 (E.D.N.Y. 2016).  In order to meet a

listed impairment, a claimant "must show that [her] impairment meets or equals *all* specified

criteria of a listing[;] . . . '[a]n impairment that manifests only some of those criteria, no matter

how severely, does not qualify.'"  *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990)).

The claimant bears the burden to prove that his or her impairments meet or equal a listed

impairment.  *See Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006).

       "Where the claimant's symptoms, as described in the medical evidence, appear to

match those described in the Listings, the ALJ must provide an explanation as to why the

claimant failed to meet or equal the Listings."  *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52

(W.D.N.Y. 2002).  If the ALJ fails to do so, however, "the court may 'look to other portions of

the ALJ's decision and to clearly credible evidence in finding that his determination was

supported by substantial evidence.'"  *Hall v. Berryhill*, 2018 WL 1071508, *3 (W.D.N.Y. 2018)

(quoting *Berry*, 675 F.2d at 469); *accord* SSR 17-2P, 2017 WL 3928306 at *4 (an ALJ is "not

required to articulate specific evidence supporting his or her finding that the individual(s) does

not medically equal a listed impairment[;] [g]enerally, a statement that the individual(s) does not

medically equal a listed impairment constitutes sufficient articulation for this finding").

       At the time of the ALJ's decision, to qualify for Listing 11.02A, a claimant was

required to establish, in relevant part, evidence of "[g]eneralized tonic-clonic seizures . . . ,

occurring at least once a month for at least 3 consecutive months . . .  despite adherence to

prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 11.02(A) (2018). The Listings specifically define the standard of "adherence to prescribed treatment" to mean that an individual has taken medication and followed other treatment procedures as prescribed by their physician for three consecutive months. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.00C.

In his decision, the ALJ explicitly considered Listing 11.02 and concluded that the evidence in the record was insufficient to establish that Meiers "had the requisite frequency of seizures, [or] that [she] adhered to prescribed treatment." (Tr. 18). The ALJ cited no specific evidence in support of this one sentence explanation, although his decision later noted that the record contained evidence that Meiers experienced seizures "due [to] medication non-compliance" and that by December 2017 Meiers experienced seizures only approximately once every two to three months. (Tr. 21-22 (citing Tr. 597, 646, 778).

Although the ALJ's analysis at step three could have been more thorough, remand is not required because other portions of the ALJ's decision and the medical record establish that Meiers does not meet "all" of the specified criteria of Listing 11.02A. *See Carter v. Colvin*, 2016 WL 3360559 at *11; *Hall v. Berryhill*, 2018 WL 1071508 at *3. In particular, the record does not establish that Meiers suffered at least one seizure per month for three consecutive months during a period of adherence to her prescribed medication regimen. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§11.00C, 11.02(A).

Meiers contends that evidence in the record demonstrates that she suffered seizures at least once a month during the periods November 2016 through March 2017 and September 2017 through December 2017. (Docket # 12-1 at 14). Although she acknowledges that the record evidences periods of medication non-compliance, particularly before late 2016, she maintains – without any supporting record citations – that she was compliant with her

providers' treatment recommendations, including medication compliance "by the end of 2016 and certainly once she started treating at Strong Epilepsy Center." (*Id.*). To the contrary, I agree with the Commissioner that the record does not support Meiers's assertion. (Docket # 13-1 at 8).

Indeed, the record contains several references suggesting that Meiers was not compliant with her prescribed medications during this time period. For instance, during the latter part of 2016, Meiers visited the emergency room in October (Tr. 612-18), November (Tr. 618-22), and December (Tr. 622-27) complaining of seizures or suspected seizures. Records summarizing those visits include lab results demonstrating insufficient levels of her antiseizure medication phenytoin (also referred to as Dilantin) during these episodes (Tr. 615-16, 685), notations that Meiers frequently admitted not taking her medications or missing doses (Tr. 617, 618, 621, 685), and notes suggesting that her seizures could be attributed to poor medication compliance (Tr. 615, 620). Meiers returned to the emergency room several times in January and February 2017 for breakthrough seizures (Tr. 490-518, 519-24, 643-49), but they were attributed to attempts to wean off Dilantin by using an alternative antiseizure medication and to suspected medication noncompliance. (Tr. 412, 492-94, 496, 503, 511, 643, 646).

By September 2017, Meiers reported experiencing approximately one seizure a month. (Tr. 750). At this time, she had been weaned from Dilantin and was taking a combination of lamotrigine and Keppra to manage her seizures. (Tr. 751). Her neurologist, Bhrugav Gautam Raval ("Raval"), MBBS, advised her to gradually increase her dosage of lamotrigine. (Tr. 755). By December 2017, medical records suggest that Meiers was only experiencing seizures every two or three months despite not increasing her dosage of lamotrigine as directed. (Tr. 778). In a March 2018 opinion, Raval reported that Meiers was experiencing breakthrough seizures approximately once every two months. (Tr. 798).

On this record, I find that substantial evidence establishes that Meiers did not

meet the criteria of Listing 11.02A because the record demonstrates that the only periods during

which she consistently experienced seizures approaching the requisite frequency were those

during which she was not compliant with her prescribed treatment or was in the process of

adjusting her antiepileptic medication resulting in an absence of therapeutic levels of antiseizure

medication in her blood.  *See*, *e.g.*, *Pena Lebron v. Comm'r of Soc. Sec.*, 2019 WL 1429558, *13

(S.D.N.Y. 2019) (substantial evidence supported ALJ's conclusion that Listing 11.02(A) was not

met despite "a possibility (though not a certainty) that plaintiff had the requisite frequency of

seizure[,]" where plaintiff was not compliant with prescribed treatment) (collecting cases); *Webb

v. Astrue*, 2012 WL 589660, *2 (N.D.N.Y. 2012) ("the ALJ correctly found that the record

indicates that [claimant's] medication levels were at times low[,] . . . and when phenytoin levels

were therapeutic, . . . there were no reported seizures") (internal quotations and brackets

omitted); *Bolden v. Comm'r of Soc. Sec.*, 556 F. Supp. 2d 152, 163 (E.D.N.Y. 2007) ("adherence

with prescribed medical treatment is an essential element of the medical listing for convulsive

epilepsy and, accordingly, its absence prevents a seizure disorder from being considered a listed

impairment").  Accordingly, I find that the ALJ's step three finding was not erroneous and that

remand is not warranted on this basis.  *See*, *e.g.*, *Bolden v. Comm'r of Soc. Sec.*, 556 F. Supp. 2d

at 163 ("[a]lthough the ALJ did not expressly predicate her findings at step three upon plaintiff's

noncompliance with his medication, the record clearly would have allowed her to do so").

B.   **The ALJ's Mental RFC Assessment**

An individual's RFC is her "maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel,* 198

F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)).  When

making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, \*9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

Meiers contends that the ALJ failed to account for limitations assessed by state agency consultants Kristina Luna ("Luna"), Psy.D. and S. Juriga ("Juriga"), Ph.D. (Docket # 12-1 at 16-19). Specifically, Meiers maintains that the ALJ's RFC assessment fails to account for Luna's opinion that Meiers would be moderately limited in her ability to relate adequately with others, as well as Juriga's opinion that she would be moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. (*Id.*). According to Meiers, although the ALJ accounted for her difficulties interacting with coworkers and the general public in formulating her RFC, the ALJ improperly failed to account for her difficulty interacting with supervisors. (*Id.*).

I disagree with Meiers that the ALJ failed to consider the limitations assessed in the medical opinions of record or that the ALJ's RFC assessment fails to adequately account for Meiers's mental capabilities. In his decision, the ALJ thoroughly discussed the opinions of Luna and Juriga and specifically noted that both opined that Meiers had some limitations in her ability to interact with others. (Tr. 23-24). The ALJ further noted that Juriga concluded that, despite these limitations, Meiers would be able to handle "brief [and] superficial contact" with

coworkers and the general public and "ordinary levels of supervision in the customary work setting."  (Tr. 23).

With respect to Meiers's ability to relate adequately to others, I conclude that the ALJ adequately accounted for the limitations assessed by Juriga and Luna.  Contrary to Meiers's contention, the ALJ adequately incorporated their opinions into his RFC assessment by including the limitation that Meiers was restricted to occasional interaction with coworkers and the general public.  (Tr. 20).  Although both of the state agency consultants assessed that Meiers would have some difficulty interacting with others, Juriga specifically opined that Meiers was capable of sustaining an ordinary level of supervision in the workplace, but would need limited contact with coworkers and the general public.  (Tr. 63).  The ALJ's determination not to include any specific limitation in the RFC relating to Meiers's ability to interact with supervisors (Tr. 20) is consistent with Juriga's opinion, as well as other record evidence demonstrating that Meiers herself reported no difficulties following instructions or responding appropriately to those in authority (Tr. 204).  Meiers has simply failed to provide any support for her contention that Juriga's and Luna's conclusion that she has "some" limitations in her ability to interact with others required the ALJ to conclude that she would be limited in her ability to interact with supervisors.

Nor do I find that the ALJ improperly failed to account for the moderate mental impairments that he assessed at step three in formulating his RFC.  (Docket # 12-1 at 16).  At step three, the ALJ determined that Meiers had moderate limitations in interacting with others.  (Tr. 19).  As the ALJ noted in his decision, the limitations identified were "not a residual functional capacity assessment but [were] used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."  (Tr. 20).  A conclusion that a claimant suffers

from moderate impairments at steps two or three is not necessarily inconsistent with a conclusion that a claimant is not disabled.  *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014); *see Huestis v. Comm'r of Soc. Sec.*, 2014 WL 4209927, *5 (D. Vt. 2014) ("[t]he ALJ is not required to explicitly include the "paragraph B" limitations in his RFC assessment or hypothetical to the VE") (collecting cases).  In any event, as discussed at length above, I find that the ALJ adequately accounted for Meiers's moderate limitations in formulating the RFC.

## CONCLUSION

After careful review of the entire record, this Court finds that the Commissioner's denial of SSI/DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **GRANTED**.  Meiers's motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and Meiers's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
      May 28, 2020